```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

PRIME INSURANCE SYNDICATE, INC.                    CIVIL ACTION

v.                                                 NO. 07-604

ORLEANS LIMOUSINES and TRANSPORTATION, INC.        SECTION "F"
GAIL MARIE BUTLER, LINDA L. GUERINGER,
CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS,
and THE HONORABLE PIPER D. GRIFFIN

### ORDER AND REASONS

Before the Court is Prime Insurance's Motion for Temporary Restraining Order and Preliminary Injunction.[1] For the reasons that follow, the motion is GRANTED and the state court is permanently enjoined from proceeding on the limited issue of whether the insurance policy at issue was effectively cancelled under Louisiana law on November 16, 2001.

### **Background**

This request for injunctive relief under the relitigation exception to the Anti-Injunction Act, arises out of a judgment issued by Judge Porteous of this Court that an insurance contract between Prime Insurance Syndicate, Inc. and Orleans Limousines and Transportation, Inc. was effectively cancelled on November 16, 2001.

---

[1] The Court notes, and the parties concede, that Prime Insurance truly seeks permanent injunctive relief and the Court treats the request for injunctive relief as such.

1

On May 28, 2002, Orleans Limo sued in state court its insurance agents, Hurd Insurance Agency and Prime Insurance for failure to properly place and maintain insurance coverage. Hurd Insurance asserted cross-claims against Prime Insurance and filed a third-party complaint against A.I. Credit Corp. A.I. Credit removed the lawsuit, invoking federal court diversity jurisdiction; the case was assigned to Judge Porteous (and reassigned more recently to this Court).

Prime Insurance asked in federal court for summary judgment on the basis that the policy of insurance issued by it to Orleans Limo had been properly cancelled, effective November 16, 2001, by A.I. Credit. On January 20, 2005, Judge Porteous granted Prime Insurance's motion, and held that because the policy was cancelled in accordance with Louisiana law, Prime was not bound to provide coverage to Orleans Limo after November 16, 2001. No appeal was taken.

Meanwhile, on September 11, 2002, and while the Porteous case was still pending and undecided, Linda Gueringer sued Prime Insurance, Orleans Limo, and Orleans Limo driver Gail Butler in state court for damages arising from a January 19, 2002 car accident. One of the allegations in Ms. Gueringer's state court suit is that Prime Insurance had issued a liability insurance policy to Orleans Limo that was in effect at the time of her accident on January 19, 2002, the very policy Judge Porteous held,

albeit not until 2005, had been cancelled.[2]

Prime Insurance filed an exception to no right of action in state court and sought summary judgment based on the federal court judgment that determined that Orleans Limo's insurance policy had been cancelled effective November 16, 2001.  The state trial court denied both the exception to no right of action and the motion for summary judgment.[3]  After the state court denied Prime Insurance's exception to no right of action, Prime filed an application for supervisory writs; the application was denied.

On February 5, 2007 -- one week before the state court trial was scheduled to begin -- Prime Insurance filed in this Court its application for a temporary restraining order and preliminary injunction, to enjoin the state court trial as against Prime.  On February 6, 2007, the Court granted Prime Insurance's motion and set the motion for temporary restraining order and preliminary injunction for hearing.[4]

---

[2] Why the decision came so much later is unclear. Apparently, Judge Porteous did not know of the Gueringer lawsuit pending in state court.

[3] On March 29, 2006, in denying the exception to no right of action, the state trial court's judgment simply recited that "...the court considering the law and the evidence to be in favor of the plaintiff, Linda Gueringer, IT IS ORDERED, ADJUDGED AND DECREED that the exception of no right of action be and the same is hereby denied."

[4] On February 14, 2007, the Court granted the parties' motion for extension of the temporary restraining order and continuance of the February 16, 2007 hearing on temporary restraining order and preliminary injunction.

In support of its request for injunctive relief, Prime Insurance relies on the relitigation exception of the Anti-Injunction Act, which permits a federal court to enjoin a state court proceeding in order to protect or effectuate a federal judgment. See 28 U.S.C. § 2283. Linda Guerringer opposes Prime Insurance's request for injunctive relief, mistakenly contending that the federal court judgment should not be binding on Guerringer because she was not a party to the federal court action and the federal court did not know the state lawsuit was pending when it ruled.

I.

A. Standards for Injunctive Relief

Injunctive relief "'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.'" Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex., 905 F.2d 63, 65 (5th Cir. 1990) (quotation omitted); see also PCI Transport., Inc. v. Ft. Worth & Western R.R. Co., 418 F.3d 535, 545 (5th Cir. 2005). A temporary restraining order or preliminary injunction may be granted only if the plaintiff shows: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunctive relief is denied; (3) the threatened injury to the movant outweighs the harm the injunction will cause the opponent; and (4) the injunctive relief

will not disserve the public interest. See Lakedreams v. Taylor, 932 F.2d 1103, 1107 (5th Cir. 1991).

To succeed on a request for a permanent injunction, "a petitioner must show 'a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner.'" See Ballenger v. Mobil Oil Corp., 138 Fed.Appx. 615, (5th Cir. 2005). The Fifth Circuit instructs that "no independent demonstration is necessary to win an injunction under the relitigation exception to the Anti-Injunction Act...[r]ather, demonstrating that the state litigation concerns an issue actually decided by the federal courts is sufficient to demonstrate both the harm of continuing the state litigation and the lack of an adequate remedy at law." Id. (citing Vazquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 667 (5th Cir. 2003), which held that the district court's finding that the plaintiff was attempting to relitigate the final judgment of a federal court is sufficient to support the injunction).

B.  The Relitigation Exception to the Anti-Injunction Act

Notions of federalism are implicated by the issue before the Court. A federal court's power to enjoin state court proceedings is limited by the very architecture of our republican system and by law. The Anti-Injunction Act, 28 U.S.C. § 2283 instructs:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its

> jurisdiction, *or to protect or effectuate its judgments*. (emphasis added)[5]

The last exception -- the "relitigation exception" -- permits the Court to enjoin state court proceedings if those state court proceedings "threaten to undermine a federal judgment having *preclusive* effect under the 'well-recognized concept' of collateral estoppel."  See <u>Duffy & McGovern Accommodation Services v. QCI Marine Offshore, Inc.</u>, 448 F.3d 825, 828 (5th Cir. 2006).  The preclusiveness of collateral estoppel doctrinally supports our state-federal model and informs this Court's decision.  To determine whether the relitigation exception is applicable, the Fifth Circuit instructs this Court's analysis:

> First, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action.  Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction.  Third, the prior action must have concluded with a final judgment on the merits.  Fourth, the same claim or cause of action must be involved in both suits.

<u>New York Life Ins. Co. v. Gillispie</u>, 203 F.3d 384, 387 (5th Cir. 2000) (insurer's action fell under the relitigation exception to Anti-Injunction Act based on a prior federal judgment that insured's cause of death was suicide and excluded coverage).

However, if a state court order (that is itself preclusive under state law) effectively denies preclusive effect to a federal

---

[5] The statutory text is without limits, but courts have imposed limits to be faithful to our federalism context.

court order, injunctive relief is forbidden under the Full Faith and Credit Act, as construed by the U.S. Supreme Court in Parsons Steel.  See id.  In Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 524 (1986), the High Court held that a state court's final determination that a federal judgment is not preclusive bars the federal court from enjoining the state court proceedings, reasoning that "[c]hallenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from [the Supreme Court]."

Thus, Parsons Steel forbids enjoining the state court suit if "the state court has finally determined in the first instance that the federal judgment is not preclusive."  See Duffy & McGovern Accommodation Services, 448 F.3d at 828.  That is a central question for resolution before anything else.[6]

The Court must give the same preclusive effect to the Louisiana state court judgment as would a Louisiana court.  The Court must therefore determine whether the state court has "finally rejected" the claim that the federal court order in favor of Prime Insurance bars relitigation of the coverage issue.  See id.  If so, "the Full Faith and Credit Act applies and the Court must turn to state law to determine the preclusive effect of the state court's decision."  Id.  Thus, even if this Court disagrees with the state

---

[6] An issue plaintiff ignores.

court order, "the proper avenue for appeal [would be] the state court system and ultimately the United States Supreme Court." See Duffy & McGovern Accommodation Services, 448 F.3d at 828. That recognizes the admittedly cumbersome but our valued federal system of governing.

Under Louisiana law, a judgment must be "final" to be entitled to preclusive effect. La.R.S. § 13:4231 (2006). A final judgment is one that "determines the merit in whole or in part", whereas an interlocutory judgment is one that "does not determine the merits but only preliminary matters in the course of the action." La. Code Civ. Proc. art. 1841 (2006). Louisiana Code of Civil Procedure article 2083(c) provides that "[a]n interlcutory judgment is appealable only when expressly provided by law."

Louisiana Code of Civil Procedure article 968 expressly provides that a court's order denying a motion for summary judgment is not appealable: "An appeal", the article commands, "does not lie from the court's refusal to render any judgment on the pleading or summary judgment."[7] A state court order rejecting an exception to a claim of redress also lacks finality and has been characterized as interlocutory and unappealable. See La. Code of Civ. P. art 1841; see also State v. Placid Oil Co., 274 So.2d 402

---

[7] Further, comment (d) to Article 968 continues that "...a trial court's action in overruling a motion...for summary judgment...is merely an interlocutory judgment causing no irreparable injury[;] it cannot be appealed, except as under the appeal from the final judgment rendered in the case."

(La.App. 1 Cir. 1972); see Rapides Cent. Ry. co. v. Mo. Pac. R. Co., 207 La. 870, 22 So.2d 200 (1945); See Young v. City of Plaquemine, 927 So.2d 408 (La.App. 1 Cir. 11/4/05) (trial court's denial of motions for summary judgment and exceptions based on res judicata was not appealable, even if trial court designated its order as final; code provision authorizing appeals from certain grants of partial summary judgment did not apply to denials of summary judgment or denials of exceptions).

## II.

Here, Prime Insurance asked for an exception of no right of action in the state court and a motion for summary judgment based on the federal court judgment that determined that Orleans Limo's insurance policy had been cancelled as of November 16, 2001. The state trial court denied both the exception of no right of action and the motion for summary judgment.[8]

Under Louisiana law, the state court pronouncements that denied Prime Insurance's exception and motion for summary judgment were interlocutory, not final. Accordingly, when the state court denied Prime Insurance's exception and motion for summary judgment, no final judgment was rendered, because the court did not determine the merits of the case, only whether or not the lawsuit may

---

[8] In denying the exception of no right of action, the state court said little in the way of enlightenment about the court's decision. Prime's effort to seek a quick appellate review was also frustrated.

proceed.  Thus, the state court did not "finally reject" (the Parsons Steel test) Prime Insurance's claim that the federal court judgment bars relitigation of the coverage issue.  Because the state court has not "finally rejected" Prime Insurance's claim that the federal court judgment bars Ms. Gueringer from relitigating the coverage issue, Parsons Steel does not condemn a federal court injunction against the state court proceedings under Full Faith and Credit concerns.  The issue of insurance coverage regarding the Gueringer case still awaits final state court appellate review.

This Court may therefore enjoin the state court from relitigating the issue of policy coverage, if Prime Insurance has met the four-part test of the relitigation exception.  It does.  The only issue Gueringer presses is that she was not a party to the federal court suit that determined that the insurance policy at issue was cancelled on November 16, 2001.  Therefore, her argument goes, she cannot be bound by the federal judgment.  The Court disagrees.[9]

Non-parties may be bound by a judgment as if they were effectively parties, if the non-party was represented in the original federal court action.  See Vines v. University of Louisiana at Monroe, 398 F.3d 700, (5th Cir. 2005) (citing Meza v. Gen. Battery Corp., 908 F.2d 1262, 1266-67 (5th Cir. 1990)).  This

---

[9] Ignoring Parsons Steel and Gillispie, Gueringer rather cavalierly raises the specter of Due Process, with absolutely no reference to credible or coherent authorities.

Court must apply federal law to determine the collateral preclusive effect given the prior federal court judgment. See <u>Freeman v. Lester Coggins Trucking, Inc.</u>, 771 F.2d 860, 862 (5th Cir. 1985) (reciting the three criteria for application of collateral estoppel).[10] Indeed, the Fifth Circuit has written, "[u]nlike claim preclusion, the doctrine of issue preclusion may not always require complete identity of the parties." See <u>Next Level Communs. L.P.v. DSC Communs. Corp.</u>, 179, F.3d 244, 250 (5th Cir. 1999) (citation omitted). "A preclusion defense...may be invoked...in limited instances...against a non-party by a party to the prior suit." See <u>Terrell v. DeConna</u>, 877 F.2d 1267 (5th Cir. 1989). In <u>Terrell</u>, the Fifth Circuit noted that one of the limited circumstances is that "federal courts will bind a nonparty whose interests were

---

[10] <u>Freeman</u> outlines the criteria for collateral estoppel:

(1) that the issue at stake be identical to the one involved in the prior litigation;
(2) that the issue has been actually litigated in the prior litigation; and
(3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in the earlier action.

Id.; see also <u>Duffy & McGovern Accommodation Services v. QCI Marine Offshore, Inc.</u>, 448 F.3d 825, (5th Cir. 2006). The issue as to when Prime Insurance's policy was in effect is one of the identical (and central) issues in Gueringer's state lawsuit. That issue was actually litigated in federal court and the determination of the coverage issue was obviously necessary to the federal court's order granting summary judgment.

adequately represented by a party in the original suit." This triggers the doctrine of virtual representation in the collateral estoppel setting.

The Court agrees with Prime Insurance that the virtual representation doctrine, an exception to the mutuality requirement for issue preclusion, applies here. Doctrinally, "a person may be bound by a [prior] judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." See Freeman, 771 F.2d at 863 (declining to extend virtual representation "so as to bar the litigation by a mother and siblings of their independent wrongful death claim of a family member, because of a judgment rendered against the husband-father in an earlier action on his own individual claim for his own personal injuries, though stemming from the same accident"). The fact-setting in Freeman is vastly different.[11] Here, the identical issue of coverage is inextricably intertwined in both the federal and state lawsuits.

---

[11] In Freeman, a family was injured and the daughter in the family died when the family's car collided with a truck driven during the course of the truck-driver's employment. In a separate suit, the father sued for his injuries arising out of the accident; the jury found that the defendant company and defendant driver were not negligent. The father also filed suit for himself and as representing four other claimants for the wrongful death of his daughter. In this latter suit, the Fifth Circuit determined that the father was collaterally estopped from maintaining his wrongful death action because of the prior judgment on the jury verdict. However, the Fifth Circuit further determined that the father's individual suit did not bind his wife and children, so he was permitted to maintain an action on their behalf. Id. 864-66.

Application of the virtual representation doctrine requires more than a showing of parallel interests. Id. at 864 (citation omitted). There must be "an express or implied legal relationship in which the parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." See Pollard v. Cockrell, 578 F.2d 1002, 1009 (5th Cir. 1978) (observing by way of example the types of relationships contemplated by the virtual representation doctrine as "estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by a trustee"). Virtual representation is indeed a narrowly applied doctrine, but it would seem that when an issue is singular to the outcome of a central issue in the federal and (later) state courts, its application is appropriate and rational.

In the prior federal court suit, Orleans Limo fully litigated the issue of policy coverage against its insurer, Prime Insurance. Litigation of that discrete coverage issue in the prior federal court suit implicated Orleans Limo's accountability to non-parties who filed subsequent suits raising identical coverage issues involving liability insurance coverage. See id. (citation omitted). Orleans Limo's interest in pursuing a determination that it was covered by the Prime Insurance policy was undeniably and identically aligned with any party who would seek to recover damages for the negligence of Orleans Limo. In filing suit to

protect itself from any third party claims based on liability coverage, it was directly implicating the interests of any third party claimants of the coverage, such as Gueringer.[12]

Prime Insurance has "demonstrat[ed] that the state litigation concerns an issue actually decided by the federal courts; [this showing suffices] to demonstrate both the harm of continuing the state litigation and the lack of an adequate remedy at law." See Vazquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 667 (5th Cir. 2003). Thus, the Court finds that Gueringer is collaterally estopped under federal law from relitigating the issue of insurance coverage. Gueringer may obviously pursue her state court negligence claims against Orleans Limo and Butler. But not Prime Insurance.

---

[12] Indeed, Gueringer sues Prime Insurance in state court under the Louisiana direct action statute, which permits third-party claimants to sue insurers directly based on the state's requirement that motorists such as Orleans Limo carry liability insurance. The insurance contract between Orleans Limo and Prime Insurance determined the terms and conditions of insured and insurer and is the foundation of her claim under the direct action statute. A federal district judge has already determined that that contract was cancelled. Orleans Limo has no insurance contract with Prime Insurance and, without the benefit of insurance, must answer directly for any negligence. Gueringer has no greater rights under that cancelled contract: as a third-party beneficiary to the insurance contract between Orleans Limo and Prime Insurance, she may not recover at all as to Prime Insurance and the relitigation exception to the Anti-Injunction Act permits this Court to enjoin her from pursuing that claim, and the state court from proceeding in a manner that is inconsistent with this Order and Reasons.

Accordingly, Prime Insurance's motion for permanent injunction is GRANTED as to the issue of the insurance policy's cancellation as determined by the federal court judgment.

New Orleans, Louisiana, March 23, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE